UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

CRS HOLDING OF AMERICA, LLC,
et al,[1]
      Debtor,
_____/

Case No. 8:14-bk-10142
Chapter 11

## *CHAPTER 11 CASE MANAGEMENT SUMMARY*

CRS Holding of America, LLC ("CRS Holding"), Bargain Computer Products of Ybor City, LLC, Creative Recycling Services, LLC, Creative Recycling Solutions, LLC, Creative Recycling Systems of Georgia, LLC, Creative Recycling Systems of Illinois, LLC, Creative Recycling Systems of Kentucky, LLC, Creative Recycling Systems of Louisiana, LLC, Creative Recycling Systems of North Carolina, LLC, Creative Recycling Systems of North Florida, LLC, Creative Recycling Systems of Pennsylvania, LLC, Creative Recycling Systems of South Florida, LLC, Creative Recycling Systems of Tennessee, LLC, Creative Recycling Systems, LLC, Creative Recycling Technologies II, LLC, Creative Recycling Technologies III, LLC, Creative Recycling Technologies, LLC, Dynamic Leasing LLC, Environmental Services Sales & Marketing, LLC, Greenrock Rare Earth Recovery, LLC, Creative Recycling Systems of New England, LLC, and Planet Gadget USA, LLC (collectively, "CRS" or "Debtors"), by and through their undersigned counsel and pursuant to L.B.R. 2081-1, file this, their Chapter 11 Case Management Summary, and state as follows:

### *General Description of Debtors' Businesses*

---

[1] This Case Management Summary is applicable to all above-identified Debtors but is only being filed in the CRS Holding case pending a ruling on the Motions for Joint Administration filed in each Debtors' case.

CRS Holding is a Delaware limited liability company with its principal place of business in Tampa, Florida. CRS Holding, in turn, owns 100% of the membership interest in its twenty (20) subsidiary companies, each of which are Florida limited liability companies.

CRS, acting through its subsidiaries, provides electronics recycling (e.g., televisions, computers and computer components) to consumers, businesses and governmental agencies. CRS's offerings are designed to meet customers' demand for data security and environmental compliance.

There are two (2) primary segments to CRS's business, which are known as "end-of life" ("EOL") and reuse. The EOL business, operating as Creative Recycling Systems, provides electronics recycling and data security services. The reuse business, operating as Bargain Computer Products, provides consumer, business and governmental customers with quality refurbished electronic products.

As of December 31, 2013, CRS had a workforce of approximately 345 employees working from approximately 10 facilities in 11 states. For the reasons described below, CRS now operates from approximately 6 facilities in 4 states with a reduced workforce.

### *Locations of Debtors' Operations*

The Debtors' corporate headquarters and primary base of operations is located in Tampa, Florida. The Debtors lease their Tampa locations and all other real property facilities where their operations are located. In addition to the corporate headquarters in Tampa, the Debtors currently operate facilities in Bloomfield, Connecticut; Durham, North Carolina and Columbia, South Carolina. CRS formerly operated facilities in Tallahassee, Florida, Georgia, Illinois, Kentucky, Maryland, Pennsylvania, and Tennessee.

### Consolidated Operations and Financial Reporting

Although the Debtors consist of CRS Holding and twenty-one (21) separate limited liability companies, the operations are run as a unified whole. There appears to be little or no accounting for inter-company transfers of assets, which occurs regularly, nor do the companies keep a record of which Debtor entity a particular creditor may hold a claim against. Other than titled assets, such as motor vehicles, it is virtually impossible to delineate which particular entity owns which company assets. Finally, in general, the companies do not maintain separate financial records, but instead keep consolidated financials reflecting the performance of the companies as a whole.

### *Reasons for Filing Chapter 11*

CRS has a number of credit facilities through Regions Bank and Regions Equipment Finance Corporation (collectively, "Regions"). Regions' obligations appear to be secured by a security interest in substantially all of CRS's assets. Additionally, CRS is indebted to various insiders in connection with loans made to CRS, one or more of whom claims a security interest in CRS's assets.[2]

On May 27, 2014, claiming that CRS's had defaulted under its various obligations, Regions commenced an action against CRS, its various subsidiaries, and two (2) insider guarantors to enforce payment of nearly $20M in claimed outstanding indebtedness and to foreclose its security interests in CRS's assets.[3]

In the District Court Action, Regions also sought the appointment of a receiver, which request was granted by the District Court on July 16, 2014, when Robert Swett ("Swett") was

---

[2] CRS may have various causes of action that are currently being investigated. CRS is uncertain at this point whether any creditor claims a security interest in those causes of action.
[3] Case No. 8:14-cv-01244-SDM-MAP, U.S. District Court, Middle District of Florida, Tampa Division. ("the District Court Action").

appointed as receiver for CRS and the subsidiaries. A true and correct copy of the Amended Order Appointing Receiver is attached hereto as **Exhibit A** ("the Appointment Order"). The Appointment Order vests Swett with broad powers, including the "exclusive power, duty and authority to administer and manage the borrowers' business affairs, funds, assets, choses in action, and other property; to exercise the power customarily exercised by the borrowers' officers and board of directors; to administer, manage, and oversee all aspects of the business, affairs and operations of the borrowers; [and] to marshal, preserve, and safeguard the borrowers' assets and properties . . . ." In furtherance of that Order, the operating agreements of the various entities and applicable law, on August 25, 2014, Swett appointed himself as Chief Restructuring Officer of CRS and the subsidiaries.

Since his appointment as receiver and Chief Restructuring Officer, Swett has worked with CRS's management, employees, customers, vendors and professionals to quickly gain an understanding of CRS's operations, assets, liabilities, income and expenses. In so doing, Swett determined that given the companies' delinquency on their secured debt to Regions, delinquent rent owed to certain landlords (many of whom were on the verge of obtaining eviction judgments), deferred disposal of leaded glass and other potentially hazardous materials with costly associated removal expenses, accumulated arrearages to vendors and a few utility providers, and other operational concerns—and in light of the fundamentally sound nature of CRS's underlying businesses—it would be in the best interest of CRS Holding and its subsidiaries, their creditors, their employees, and other parties in interest, for CRS to file petitions under Chapter 11. Those petitions were filed on August 29, 2014.

## *Objectives of Bankruptcy Cases*

Through this Chapter 11 case, CRS seeks to first stabilize its business operations and halt the collection and eviction efforts of its various creditors, including landlords. During the pendency of the case, CRS will seek to pare down its operations through the rejection of leases at unprofitable facilities and consolidate efforts in those locations which are profitable. CRS then intends to pursue confirmation of a Chapter 11 Plan which will provide for the sale of its collective assets as a going concern in order to maximize value for the bankruptcy estate.

**List of Management Executives, Including Their Salaries and Benefits at the Time of Filing and During the One (1) Year Prior to Filing**

| Name | Title | Interest | Benefits/Compensation |
|---|---|---|---|
| Manny Alvare | CEO | 0 | $138,666.00 ('14 YTD) / $208,000.00 ('13) |
| Robert Sweet | CRO | 0 | $200/hr ('14 YTD) / $0 (2013) |

**Debtor's Annual Gross Revenues**

In 2013, CRS had gross revenues totaling approximately $30,000,000.00.

Year to date in 2014, CRS has gross revenues totaling $14,757,649.00.

**Amounts Owed to Various Classes of Creditors**

**Obligations Owed to Priority Unsecured Creditors**

| Name | Amount Owed |
|---|---|
| IRS | Unknown |
| Florida Dept. of Revenue | Unknown |
| Other Dept of Revenue | Unknown |

**Obligations Owed to Secured Creditors**

| *Secured Creditor* | *Collateral* | *Outs'g Loan Balance* |
|---|---|---|
| Regions | All assets | $15,000,000.00 |
| JY Creative | All assets | $6,800,000.00 |
| Intersection | All assets | $250,000.00 |

**Obligations Owed to General Unsecured Creditors**

Estimated general unsecured claims: $5,000,000.00.

**General Description and Approximate Value
of Debtor's Current and Fixed Assets**

The Debtors' assets consist primarily of equipment, contract rights, inventory, and accounts receivable. The estimated fair market value of these assets is unknown.

**Number of Employees and Amounts of Wages Owed as of the Petition Date**

134 employees; total amount of wages owed as of the petition date is $242,858.69.

**Status of Debtor's Payroll and Sales Tax Obligations**

Current as to payroll, with the exception of stub period from August 18, 2014 through the Petition Date.

As to sales tax, the Debtor owes approximately $665.21 to the Florida Department of Revenue.

**Anticipated Emergency Relief**

- Emergency Motion to Jointly Administer Debtors' Cases
- Emergency Motion for Authority to Use Cash Collateral
- Emergency Motion to Approve Post-Petition Financing
- Emergency Motion for Authority to Retain Pre-Petition Bank Accounts

- Emergency Motion to Pay Pre-Petition Employee Wages
- Emergency Motion to Continue Utility Service
- Emergency Motion to Reject Certain Commercial Real Property Leases
- Emergency Motion to Extend Time for Payment of Post-Petition Rent

**SHUMAKER, LOOP & KENDRICK, LLP**

/s/ Hugo S. deBeaubien
**JAY B. VERONA, ESQ.**
Florida Bar No. 352616
jverona@slk-law.com
**HUGO S. deBEAUBIEN, ESQ.**
Florida Bar No. 058100
bdebeaubien@slk-law.com
101 E. Kennedy Blvd., Suite 2800
Tampa, FL 33602
Phone: 813-229-7600
Fax: 813-229-1660
*Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2014, a true and correct copy of the foregoing **Motion** was served via CM/ECF Electronic Noticing or US Mail on the following:

| | |
|---|---|
| Regions Bank<br>c/o Grayson Hall, Jr., as President & CEO<br>1900 Fifth Avenue North<br>Birmingham, AL 35203 | Regions Equipment Finance Co.<br>c/o Grayson Hall, Jr., as President & CEO<br>1900 Fifth Avenue North<br>Birmingham, AL 35203 |
| Regions Bank<br>c/o Keith Fendrick, Esq.<br>Holland & Knight, LLP<br>100 North Tampa St.<br>Suite 4100<br>Tampa, FL 33602 | Regions Equipment Finance Co.<br>c/o Keith Fendrick, Esq.<br>Holland & Knight, LLP<br>100 North Tampa St.<br>Suite 4100<br>Tampa, FL 33602 |
| JY Creative Holdings, Inc.<br>c/o Providence Family Offices, LLC, as Registered Agent<br>202 S. Rome Ave, #150<br>Tampa, FL 33606 | Intersection, LLC<br>c/o Registered Office Service Company as Registered Agent<br>203 NE Front St. Suite 101<br>Milford, DE 19963 |
| JY Creative Holdings, Inc.<br>c/o Nathan Carney, Esq. | Intersection One, LLC<br>Jeffrey T. Kucera, Esq. |

| | |
|---|---|
| 400 N. Ashley Drive<br>Suite 2600<br>Tampa, FL 33602 | K&L Gates LLP<br>200 S. Biscayne Blvd.<br>Suite 3900<br>Miami, FL 33131 |
| Office of the United States Trustee<br>501 E. Polk St.<br>Suite 1200<br>Tampa, FL 33602 | 20 Largest / LBR 1007-2 Matrix |
| UnionBanCal Equities, Inc., Member<br>c/o Registered Agent Solutions<br>1220 South Street, Suite 150<br>Sacramento, CA 95811 | UnionBanCal Equities, Inc., Member<br>445 So. Figueroa St., 21st Floor<br>Los Angeles, CA 90071 |

                          /s/ Hugo S. deBeaubien
                          **Attorney**

# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK and REGIONS
EQUIPMENT FINANCE CORP.,

    Plaintiffs,

v.                                                       CASE NO. 8:14-cv-1244-T-23MAP

CRS HOLDING OF AMERICA, LLC,
et al.,

    Defendants.
_____/

**AMENDED[*] ORDER APPOINTING RECEIVER AND INJUNCTION**

The plaintiffs sue (Doc. 1) twenty-three defendants and allege that the defendants breached loan agreements. Of the twenty-three defendants, twenty-one are the alleged borrowers,[**] and the remaining two, Intersection One, LLC, and JY

---

[*] The plaintiffs move (Doc. 35) to modify the July 10, 2014, order (Doc. 34) to substitute Robert Swett for Saleena Miller as receiver. The borrowers submit (Doc. 36) a notice of non-opposition. The plaintiffs' motion (Doc. 35) is **GRANTED**, and the July 10 order (Doc. 34) is **VACATED**. The plaintiffs' motion (Doc. 27) to appoint Saleena Miller as receiver is **DENIED AS MOOT**.

[**] The borrowers comprise CRS HOLDING OF AMERICA, LLC, a Delaware limited liability company, CREATIVE RECYCLING SYSTEMS, LLC, a Florida limited liability company, DYNAMIC LEASING LLC, a Florida limited liability company, BARGAIN COMPUTER PRODUCTS OF YBOR CITY, LLC, a Florida limited liability company, CREATIVE RECYCLING SYSTEMS OF NORTH FLORIDA, LLC, a Florida limited liability company, CREATIVE RECYCLING SYSTEMS OF SOUTH FLORIDA, LLC, a Florida limited liability company, CREATIVE RECYCLING SYSTEMS OF GEORGIA, LLC, a Florida limited liability company, CREATIVE RECYCLING SERVICES, LLC, a Florida limited liability company, CREATIVE RECYCLING SYSTEMS OF NORTH CAROLINA, LLC, a Florida limited liability company, CREATIVE RECYCLING SYSTEMS OF KENTUCKY, LLC, a Florida limited liability company, CREATIVE RECYCLING SYSTEMS OF TENNESSEE, LLC, a Florida limited liability company, CREATIVE RECYCLING TECHNOLOGIES, LLC, a Florida

(continued...)

Creative Holdings, Inc., are the alleged guarantors. Under Rule 66, Federal Rules of Civil Procedure, the plaintiffs move (Doc. 2) for the appointment of a receiver for the borrowers. The borrowers announce (Docs. 33 and 36) non-opposition to the requested relief. The guarantors lodge no opposition.

The plaintiffs demonstrate a high likelihood of success on the merits and an imminent danger of further (and perhaps irremediable) injury to collateral and the borrowers' assets. The plaintiffs assert, without contravention, that (1) the plaintiffs hold a legal interest in the borrowers' assets, (2) the borrowers' management is deadlocked and unable to cure defaults to creditors, (3) the borrowers' assets are, or are about to be, wasted, and (4) the plaintiffs will suffer irreparable injury absent the requested relief. *See Bookout v. First Nat. Mortg. & Disc. Co., Inc.*, 514 F.2d 757, 758 (Former 5th Cir. 1975) (citing Wright & Miller, *Federal Practice and Procedure*, Vol. 12, § 2983); *Moore's Federal Practice*, Vol. 13, § 66.04[2][c] (3d. ed. 2014). The probability of the plaintiffs' success on the merits, the likelihood of dissipating assets, "the imminent danger of further injury to the collateral, and the balance of the equities," commend the appointment of a receivership for the borrowers in the circumstance.

---

[**] (...continued)
limited liability company, CREATIVE RECYCLING TECHNOLOGIES II, LLC, a Florida limited liability company, CREATIVE RECYCLING SYSTEMS OF PENNSYLVANIA, LLC, a Florida limited liability company, CREATIVE RECYCLING SYSTEMS OF LOUISIANA, LLC, a Florida limited liability company, CREATIVE RECYCLING SOLUTIONS, LLC, a Florida limited liability company, CREATIVE RECYCLING TECHNOLOGIES III, LLC, a Florida limited liability company, ENVIRONMENTAL SERVICES SALES & MARKETING, LLC, a Florida limited liability company, CREATIVE RECYCLING SYSTEMS OF ILLINOIS, LLC, a Florida limited liability company, PLANET GADGET USA, LLC, a Florida limited liability company, and GREENROCK RARE EARTH RECOVERY, LLC, a Florida limited liability company.

*Bookout*, 514 F.2d at 758;  Fed. R. Civ. P. 65 and 66.  Moreover, the borrowers have been served, have had an opportunity to respond, have failed to answer or otherwise respond, and have announced non-opposition to the pending motions.[***]  The guarantors lodge no objection to the motions.  Accordingly, the plaintiffs' unopposed motion (Doc. 2) to appoint a receiver is **GRANTED**.

a) <u>Appointment and Oath</u>.  Robert Swett of Swett Consulting, LLC, whose business address is 4303 Lukow Place, Valrico, FL 33596, is appointed as Receiver for the borrowers.  The Receiver will serve until further order.  The Receiver will forthwith submit an oath agreeing to the appointment and to perform the duties outlined in this order.

b) <u>Receiver's Bond</u>.  The Receiver will obtain a surety bond in the amount of $1,000,000.00, to be provided by a corporate surety to guarantee performance of the Receiver's duties.  The bond will be payable to the clerk and will provide coverage to the plaintiffs, the borrowers, and others for loss caused by the Receiver and his agents, servants, and employees.  Within thirty days after this order, the Receiver will submit the bond to the clerk.

c) <u>Powers of the Receiver</u>.  The Receiver is vested with powers available at law and equity, including the exclusive power, duty, and authority to administer and manage the borrowers' business affairs, funds, assets, choses in action, and other property; to exercise the power customarily exercised by the borrowers' officers and

---

[***] The clerk entered a default (Doc. 31) against each of the borrowers.

board of directors; to administer, manage, and oversee all aspects of the business, affairs, and operations of the borrowers; to marshal, preserve, and safeguard the borrowers' assets and properties (real, personal, and mixed; tangible or intangible); to access and possess the borrowers' documents, records, and collateral; to hold, demand, receive, and collect the borrowers' profits and collateral; to take action to enforce the borrowers' rights to collect profits and collateral; and to take action necessary to protect the borrowers' creditors.  The Receiver will exercise these powers in a manner consistent with the rights of the borrowers' creditors, employees, and customers.  The Receiver's powers include the power to:

    i.    receive, recover, possess, control, and manage the borrowers' businesses, including the borrowers' revenues, profits, and proceeds; the borrowers' security, utility, or other deposits; and the borrowers' contracts, agreements, and leases;

    ii.    possess records, data, reports, and other information pertaining to the borrowers, including books, documents, papers, and electronic and other media;

    iii.    preserve, protect, operate, manage, and maintain the borrowers' businesses and prevent the waste and dissipation of assets;

    iv.    obtain casualty, liability, and other insurance in amounts and with insurers that the Receiver deems necessary;

    v.     obtain, renew, and modify the use of operating and other licenses, permits, and approvals;

    vi.    manage repairs to the borrowers' businesses;

    vii.   hire, employ, and terminate managers, management companies, contractors, subcontractors, consultants, brokers, marketing agents, employees, agents, attorneys, accountants, and professionals as the Receiver deems necessary;

    viii.  enforce, modify, and terminate the borrowers' vendor and other contracts;

    ix.   execute and deliver documents and instruments necessary and appropriate to exercise the Receiver's powers under this order;

    x.    correct, resolve, and cure a violation of law or a legal deficiency affecting the borrowers' businesses;

    xi.   conform to existing, and enter into new, leases and occupancy agreements;

    xii.   determine the compensation for the borrowers' employees, managers, agents, independent contractors, attorneys, accountants, and professionals;

    xiii.  in the ordinary course of the borrowers' business, sell and convey the borrowers' inventory and other assets;

xiv. with prior court approval, dissolve, sell, and wind-up the affairs of the borrowers' businesses and assets in their entirety;

xv. with prior court approval, sell portions of the borrowers' businesses, including equipment, property, materials, or rights in transactions not in the ordinary course of the borrowers' businesses;

xvi. obtain warranties from third-party providers to cover products re-sold by the borrowers' businesses;

xvii. in the name of the Receiver and the borrowers' business, sue for unpaid receivables, profits, payments, income, and proceeds;

xviii. in the name of the Receiver and the borrowers' businesses, institute, defend, and participate in legal actions to protect and preserve the borrowers' businesses; to recover an asset that may be improperly or illegally held by another; and for such other reasonable purpose as may be necessary and proper under this order;

xix. intervene in any pending action affecting the borrowers' businesses or the Receiver's duties;

xx. exercise the rights of the borrowers under the Business Corporation Act or the bylaws of the borrowers' businesses, including serving on, and designating others to serve on, the board of directors; exercising a right to approve and disapprove an action of the board of directors; and exercising any other right that a borrower may

have.  As a member of the board of directors the Receiver may exercise all powers of a board member.  On request by the Receiver, a borrower will cause (in favor of the Receiver's nominees) the resignation of a borrower's representative on any outside association or board.

    d) <u>Turnover</u>.  The borrowers, together with their respective parents, subsidiaries, affiliates, officers, directors, shareholders, managers, members, owners, representatives, attorneys, agents, servants, and employees will immediately and forthwith, and no later than five business days after entry of this order, turn over to the Receiver:

    i.    any cash, inventory, equipment, account, asset, file, paper, contract, record, document, lease, insurance policy, money, bank account, permit, security, chose in action, book of account, account receivable, license, purchase offer, purchase agreement, security deposit, membership, servicing agreement, management agreement, computer file, website, permit, report; and any other document and asset related to the finance, operation, and management of the borrowers' businesses;

    ii.    any income, revenue, proceeds, and profit from the borrowers' businesses; and any check, cash, or other instruments representing

                    payment of deposit or proceeds related to the finances, operations, and management of the borrowers' businesses;

      iii.      any storage locker, post office box, and safety deposit box of the borrowers' businesses; and any key, lock combination, security code, password, or authorization required to (a) open or gain access to any asset, web site, computer file, safe deposit box, and post office box and (b) gain access to any payment, profit, and income from the borrowers' businesses.

e) <u>No Interference and Injunction</u>.  The borrowers will cooperate with the Receiver to enable the Receiver to discharge his duties.  The borrowers and borrowers' officers, directors, shareholders, managers, members, owners, representatives, attorneys, agents, servants, and employees, and all third parties in active concert or participation with them or who receive actual notice of this order, are **ENJOINED** from interfering with the Receiver's duties under this order.

f) <u>Receiver's Fee</u>.  Each month the Receiver will be paid a fee on an hourly rate, plus reimbursement of reasonable out-of-pocket expenses, including fees and costs associated with any employee, agent, property manager, attorney, accountant, and other professional hired by the Receiver according to the fee schedule below. Absent a court order to the contrary and if no objection is filed within five business days after submission of the Receiver's monthly expense report, the Receiver is authorized to make payment to herself for her services from the proceeds of the

borrowers' businesses received by the Receiver as assets of the receivership. The borrowers' businesses are responsible for payment of the Receiver's fee, and, to the extent the proceeds of the borrowers' businesses are insufficient to pay for same, the Receiver may apply to the plaintiffs for payment. Any sum due will be evidenced by a Receiver's certificate of indebtedness and secured by the plaintiffs' first-priority lien on the borrowers' business assets.

### Hourly Fee Schedule

| | |
|---|---|
| Receiver | $200.00 |
| (2) Directors | $125.00 |
| (1) Project Manager | $100.00 |
| (2) Administrative Staff | $ 75.00 |

    g) <u>Receiver's Certificates</u>. Without further order of this court, the Receiver may from time to time borrow money from the plaintiffs for the performance of the Receiver's duties under this order. The Receiver will issue a Receiver's certificate of indebtedness to the plaintiffs to evidence the debt; the debt will accrue interest at the applicable legal rate. Any funds advanced by the plaintiffs and evidenced by a certificate of indebtedness will be considered a protective advance under the plaintiffs' loan to the borrowers and will be secured by a first-priority lien on the assets of the borrowers' businesses. This order does not obligate the plaintiffs to advance to the Receiver all or part of the authorized borrowing.

    h) <u>Receiver's Reports</u>. The Receiver will prepare and submit:

      i.      an initial report and inventory under oath within forty-five days after entry of this order, which he will file with the court and serve on all parties;

      ii.      a monthly cash-receipts and disbursements report outlining the Receiver's activities within twenty days after the end of each month; the Receiver will render monthly bank statements in each such report;

      iii.      a regular monthly expense report reflecting the Receiver's activities within fifteen days after the end of each month.

i) <u>Receiver's Account</u>.  The Receiver will maintain a bank account at a federally insured institution, in which the Receiver will deposit all proceeds of the borrowers' businesses, net of any applicable costs or operation that will be paid out of any sale and income derived by the borrowers' businesses; the Receiver will pay expenses of the Receivership from the bank account.

j) <u>Receiver's Discharge</u>.  The Receiver will be deemed discharged upon an entry of an order discharging the Receiver; provided only that as a condition precedent to discharge, the Receiver must have filed with the court and served on all parties a final report and accounting satisfactory to the court.

k) <u>Judicial Immunity</u>.  The Receiver and any employees, agents, property managers, attorneys, accountants, and other professionals hired by the Receiver (i) may rely on any court orders, judgments, decrees, and rules of law, and will not be

liable to anyone for their own good faith compliance with any such order, judgment, decree, or rule of law; (ii) may rely on, and will be protected in any action upon, any resolution, certificate, statement, opinion, report, notice, consent, or other document believed by them to be genuine and to have been signed or presented by the proper parties; (iii) will not be liable to anyone for their good faith compliance with their duties and responsibilities as part of the receivership; and (iv) will not be liable to anyone for their acts or omissions (among other things, the Receiver will not be responsible for claims arising from the lack of procurement or inability to obtain insurance due to circumstances or events outside the Receiver's control and which circumstances or events were not caused by the actions of the Receiver), except upon a finding by the court that such acts or omissions were outside the scope of their duties or were grossly negligent.  Except for matters described in clause (iv) of the preceding sentence, persons dealing with the Receiver will look only to the receivership assets to satisfy any liability, and neither the Receiver nor the employees, agents, property managers, attorneys, accountants, and other professionals hired by the Receiver will have any personal liability to satisfy any such obligation.

l) <u>Retention of Jurisdiction</u>.  The court retains jurisdiction to enforce and modify this order.

ORDERED in Tampa, Florida, on July 16, 2014.

_[signature]_
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE