UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

CRS HOLDING OF AMERICA, LLC,          Case No. 8:14-bk-10142-KRM
Et al, [1]          Chapter 11
      Debtor,
_____/

**DEBTOR'S EMERGENCY MOTION FOR
AUTHORITY TO PAY RETENTION BONUSES TO NON-INSIDERS**

> *Emergency Relief Requested: For the reasons set forth more particularly in the Motion and in the Certificate of Necessity filed in support of same, the Debtor requests that the Court conduct a hearing on this Motion at the earliest opportunity and not later than September 3, 2014, and expects that such hearing will last no more than 10 minutes.*

CRS HOLDING OF AMERICA, LLC, together with its twenty-one (21) subsidiary affiliate debtors **(collectively, "CRS" or "Debtors")**, pursuant to 11 U.S.C. §§ 105, 363 and 503(c)(3), and other applicable law, hereby files this, its Emergency Motion for Authority to Pay Retention Bonuses to Non-Insiders and, in support thereof, states the following:

1. The voluntary petition in the above-styled case was filed on August 29, 2014 **("the Petition Date")**.

2. CRS is the debtor-in-possession in the above-styled case.

3. CRS operates a full service electronics recycling business, providing e-waste recycling solutions for organizations of all sizes.

4. CRS incorporates by reference the background set forth in its Case Management Summary filed in the above-styled case.

5. By this Motion, the Debtors seek authority to pay a limited monthly retention bonus

---
[1] Motion for Joint Administration pending.

to seven (7) key members of the Debtors' management team whose continuation in service to the Debtors are essential to the success of this Chapter 11 case ("Retention Bonus"). A spreadsheet identifying the referenced key employees for the bonus program and their proposed monthly bonus amounts is attached hereto as **Exhibit A.**

**The Retention Bonus**

6.      In order to ensure the retention of seven key members of the Debtors' management team, the Debtors propose to pay those individuals a monthly retention bonus commensurate with their level of responsibility and the specific role they will play in ensuring the Debtors' successful exit from bankruptcy in the coming months.

7.      The total amount budgeted for the Retention Bonuses is $15,000.00 per month, down from the previously contemplated amount of $30,000.00.

8.      The Debtors submit that none of the individuals who are to receive the Retention Bonus are insiders as that term is defined at 11 U.S.C. § 101(31). *See In re Borders Group, Inc.,* 453 B.R. 459, 467-470 (Bankr. S.D.N.Y. 2011)(explaining that a "director means an individual who sits on the board of directors" and that an "officer is defined as a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as the CEO, president, secretary or treasurer").[2]

9.      Insofar as none of the employees who are eligible for the Retention Bonus are insiders, the Debtors need not meet the heightened standard for approval of such bonus program under 11 U.S.C. § 503(c)(1), but instead need only show that the program is justified by the facts

---

[2] To the extent that Manny Alvare—the interim CEO—is determined to be insiders, the Debtors submit that he is nevertheless eligible to receive the retention bonus under § 503(c)(1) insofar as: i) Alvare has received, or expects to receive imminently, employment offers from other businesses at a higher rate of compensation; ii) the services he provides are essential to the survival of the business; and iii) the proposed bonuses do not violate the quantitative restrictions set forth in 11 U.S.C. § 503(c)(1)(C)(i) or (ii).

and circumstances of the case and its use is an exercise of sound business judgment. *See Borders*, 453 B.R. at 473 (explaining that where the employees subject to a retention bonus program are not insiders, the program must be analyzed under the less stringent section 503(c)(3) because it contemplates transactions outside the ordinary course).

10. Here, the Debtors will be paralyzed without certain key members of its management team, who are essential to the continued operations necessary to achieve a successful exit from bankruptcy, including a sale of the Debtors' assets in a manner that maximizes the value of the estates.

11. Consequently, and in light of the factors discussed more particularly below, the Debtors submit that the Retention Bonus program is necessary to ensure the success of these Chapter 11 cases and, as a result, is the product of sound business judgment.

12. Accordingly, the Debtors request leave to pay the Retention Bonus in the total amount of $15,000.00 per month to the individuals identified on **Exhibit A**.

**Business Judgment Factors**

13. As discussed above, since the Retention Bonus is not subject to analysis under 11 U.S.C. § 503(c)(1), it is instead subject to analysis under 11 U.S.C. § 503(c)(3).

14. With respect to the standard at issue, "[c]ourts have held that the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under 363(b)." *Borders*, 453 B.R. at 473.

15. In undertaking a business judgment analysis, the *Borders* court identified six factors for consideration when determining if a bonus compensation proposal and the process for its development meet the business judgment test: i) Is there a reasonable relationship between the

plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets*?;* ii) Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?; iii) Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?; iv) Is the plan or proposal consistent with industry standards?; v) What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?; and vi) Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation? *See Borders*, 453 B.R. at 474.

16. With respect to the first factor, the Retention Bonus provides motivation in the form of additional compensation for certain key employees to stay on and assist the Debtors in remaining operational in the interest of an ultimate sale during the pendency of the bankruptcy cases. As a result of the Retention Bonus, the employees are likely to stay on for as long as it takes to realize the desired objectives and the bonus plan is carefully calculated to achieve that result.

17. With respect to the second factor, the cost of the Retention Bonus, at $15,000.00 per month, is nominal relative to the Debtors' projected operating income.

18. With respect to the third factor, the Retention Bonus is fair and reasonable and, while narrowly tailored to be no more expansive than is necessary, is not unfairly discriminatory. The necessary key employees are eligible for the bonus—no more, no less.

19. With respect to the fourth factor, the Retention Bonus is structured in a manner that is consistent with other incentive and retention plans proposed by other corporate Chapter 11 debtors.

20. With respect to the fifth and sixth factors, the Debtors submit that the Retention

Bonus readily satisfies the described criteria. The Retention Bonus is the product of appropriate due diligence and solicited counsel, having been developed with the input of the Chief Restructuring Officer (who is not a beneficiary of the program) and the Debtors' outside bankruptcy counsel.

21. Accordingly, the Debtors submit that the Retention Bonus is the products of the Debtors' exercise of sound business judgment and should be approved.

WHEREFORE, CRS respectfully requests that this Court enter an Order granting the instant Motion, authorizing payment of the monthly Retention Bonus as requested herein, and for such other and further relief as this Court may deem just and proper.

**SHUMAKER, LOOP & KENDRICK, LLP**

/s/ Hugo S. deBeaubien
**JAY B. VERONA, ESQ.**
Florida Bar No. 352616
jverona@slk-law.com
**HUGO S. deBEAUBIEN, ESQ.**
Florida Bar No. 058100
bdebeaubien@slk-law.com
101 E. Kennedy Blvd., Suite 2800
Tampa, FL 33602
Phone: 813-229-7600
Fax: 813-229-1660
*Counsel for the Debtor*

# CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2014, a true and correct copy of the foregoing **Motion** was served via CM/ECF Electronic Noticing or US Mail on the following:

| | |
|---|---|
| Regions Bank<br>c/o Grayson Hall, Jr., as President & CEO<br>1900 Fifth Avenue North<br>Birmingham, AL 35203 | Regions Equipment Finance Co.<br>c/o Grayson Hall, Jr., as President & CEO<br>1900 Fifth Avenue North<br>Birmingham, AL 35203 |
| Regions Bank<br>c/o Keith Fendrick, Esq.<br>Holland & Knight, LLP<br>100 North Tampa St.<br>Suite 4100<br>Tampa, FL 33602 | Regions Equipment Finance Co.<br>c/o Keith Fendrick, Esq.<br>Holland & Knight, LLP<br>100 North Tampa St.<br>Suite 4100<br>Tampa, FL 33602 |
| JY Creative Holdings, Inc.<br>c/o Providence Family Offices, LLC, as Registered Agent<br>202 S. Rome Ave, #150<br>Tampa, FL 33606 | Intersection, LLC<br>c/o Registered Office Service Company as Registered Agent<br>203 NE Front St. Suite 101<br>Milford, DE 19963 |
| JY Creative Holdings, Inc.<br>c/o Nathan Carney, Esq.<br>400 N. Ashley Drive<br>Suite 2600<br>Tampa, FL 33602 | Intersection One, LLC<br>Jeffrey T. Kucera, Esq.<br>K&L Gates LLP<br>200 S. Biscayne Blvd.<br>Suite 3900<br>Miami, FL 33131 |
| UnionBanCal Equities, Inc., Member<br>c/o Registered Agent Solutions<br>1220 South Street, Suite 150<br>Sacramento, CA 95811 | UnionBanCal Equities, Inc., Member<br>445 So. Figueroa St., 21st Floor<br>Los Angeles, CA 90071 |
| Office of the United States Trustee<br>501 E. Polk St.<br>Suite 1200<br>Tampa, FL 33602 | 20 Largest / LBR 1007-2 Matrix |

/s/ Hugo S. deBeaubien
**Attorney**

# EXHIBIT A

|   | per month |   |
|---|---|---|
| • Manny Alvare - $208,000 | $ 2,500.00 | in-house council and acting CEO |
| • Matt Godri - $150,000 | $ 2,500.00 | VP of finance |
| • William Ramsay - $95,000 | $ 5,000.00 | VP of operations |
| • Raeni Ware - $90,000 | $ 1,250.00 | VP of Human resources |
| • Chris Schoeller (real name is Karl Schoeller) - $110,000 | $ 1,250.00 | Director of sales |
| • Fernando Alvarado - $70,500 | $ 1,250.00 | Director of back in sales/Bargin |
| • Jim Shellnutt - $90,000 | $ 1,250.00 | Operations manager Tampa |
|  total | $ 15,000.00 | |

note: this number has been reduced from $30,000 because of department heads leaving and closure of facilities..